UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

_____

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | No. 5:23-cr-00148 |
| : | |
| JORGE LUIS SANTIAGO, : | |
| Defendant. : | |

_____

**O P I N I O N**
Defendant's Motion to Dismiss the Indictment, ECF No. 11 – Denied

**Joseph F. Leeson, Jr.**                                                                                                    **October 31, 2023**
**United States District Judge**

    **I.**      **INTRODUCTION**

The defendant, Jorge Luis Santiago, was indicted by a grand jury with a single count of unlawful possession of a firearm by a felon, in violation of the Gun Control Act, specifically, Title 18, United States Code, Section 922(g)(1). The indictment alleges that Santiago possessed a loaded 9mm handgun, knowing that he had previously been convicted in the United States District Court for the Middle District of Pennsylvania of a crime punishable by imprisonment of a term exceeding one year. *See* Indict., ECF No. 1. Santiago has moved to dismiss the indictment. *See* Mot., ECF No. 11. He does not argue that the indictment is deficient, nor does he challenge the facts alleged in the indictment. Instead, he argues, *inter alia*, that the indictment must be dismissed because the section of the Act that he has been indicted under is unconstitutional as applied to him and on its face. The Court addresses his arguments below.

    **II.**      **DISCUSSION**

The statutory provision challenged in the instant case, Section 922(g)(1), provides that

> [i]t shall be unlawful for any person . . . who has been convicted in any court of, a crime punishable by imprisonment for a term

>exceeding one year . . . to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

18 U.S.C. § 922(g)(1).

**1. As-applied challenge**

The Second Amendment states, "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. "When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 2129–30 (2022). If the government wishes to regulate conduct that is protected by the plain text of the Second Amendment, then it must "justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id*. at 2130.

Pursuant to *Bruen*, the Third Circuit has since applied a two-part analytical framework in determining whether a statute is unconstitutional as applied to a particular defendant, analyzing: (1) whether the Second Amendment applies to the person and his proposed conduct, and (2) if the Second Amendment is applicable, whether the Government, bearing the burden of proof, has justified applying the statute to the defendant by "'affirmatively prov[ing] that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms.'" *Range v. Att'y Gen. United States*, 69 F.4th 96, 101 (3d Cir. 2023) (quoting *Bruen*, 142 S. Ct. at 2127).

In this case, the Government concedes that the Second Amendment applies to Santiago but argues that it does not apply to his proposed conduct, both because Santiago was on supervised release for a previous offense at the time of his conduct and because Santiago does

not allege that he possessed the firearm for a lawful purpose.[1]  Resp. at 9, 12, ECF No. 14.  However, as further discussed below, because the Government has demonstrated that Section 922(g)(1) is part of the historical tradition of disarming people like Santiago, the Court need not address whether Santiago's conduct was covered by the Second Amendment.  In other words, even if this Court assumes for Santiago's benefit that he was engaged in protectable Second Amendment conduct, the Government would nonetheless prevail.  This approach conforms with that of other judges in this district.  *See e.g., United States v. Ames*, No. 23-178, 2023 U.S. Dist. LEXIS 150982, at *5 (E.D. Pa. Aug. 28, 2023) ("The Court need not resolve whether Ames' conduct is covered by the [plain] text of the Second Amendment, because, even if his conduct is covered, the Government has affirmatively shown that 18 U.S.C. § 922(g)(1) is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms."); *United States v. Blackshear*, No. 23-159, 2023 U.S. Dist. LEXIS 163057, at *4 (E.D. Pa. Sept. 14, 2023) (same); *United States v. Green*, No. 22-387, 2023 U.S. Dist. LEXIS 168028, at *3 (E.D. Pa. Sept. 21, 2023) (same).  *But see United States v. Jenkins*, No. 23-088, 2023 U.S. Dist. LEXIS 181224, at *42 (E.D. Pa. Oct. 6, 2023) (holding that the defendant failed to show by the preponderance of evidence that he was engaged in conduct protected by the Second Amendment, and therefore not reaching the historical analogue step of the analysis).

---

[1] As part of this argument, the Government further alleges that the firearm possessed by Santiago was a stolen firearm and argues that possessing stolen property does not fall within the purview of the Second Amendment, because "possession of stolen property is generally a crime and has been for centuries." Resp. at 12.  However, Santiago was not charged with possession of a stolen firearm, nor does the indictment allege that the firearm was stolen.  Regardless, the Court need not address this argument, because even assuming the Second Amendment applies to Santiago's conduct, the Government has met its burden to show a historical analogue, as further discussed in the body of this opinion.

"Historical tradition can be established by analogical reasoning, which 'requires only that the government identify a well-established and representative historical analogue, not a historical twin.'" *Range*, 69 F.4th at 103 (quoting *Bruen*, 142 S. Ct. at 2133 ("[A]nalogical reasoning under the Second Amendment is neither a regulatory straightjacket nor a regulatory blank check.")). "Regulations targeting longstanding problems must be 'distinctly similar' to an historical analogue, but modern regulations that were unimaginable at the founding need only be 'relevantly similar' to one." *Green*, 2023 U.S. Dist. LEXIS 168028, at *3 (cleaned up) (quoting *Range*, 69 F.4th at 103).  Ultimately, the "central considerations" of the historical inquiry are "whether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified." *Bruen*, 142 S. Ct. at 2133.

In *Range*, the Third Circuit analyzed the precise statute at issue here, holding that it was unconstitutional as applied to the defendant in that case. *See Range*, 69 F.4th at 98.  More specifically, the Court held that the Second Amendment applied to Bryan Range and his proposed conduct—possessing a firearm for hunting or self-defense—and further found that the Government failed to meet its burden to demonstrate that Section 922(g)(1) is consistent with the Nation's historical tradition of disarming people like Range. *Id*. at 99, 103-06.  The Third Circuit underscored the unique nature of the facts at hand, wherein Range's prior conviction was for making a false statement on a food stamp application, "a nonviolent, non-dangerous misdemeanor" for which he was not incarcerated, but which nonetheless classified him as a felon for purposes of the federal firearm statute.  *See id*. at 99.  Among other things, the Third Circuit rejected the Government's proposed historical analogue of status-based firearms restrictions, which disarmed certain groups of people such as Black people, Catholics, and Native Americans, as overly broad.  *Id*. at 104-05.  However, the Third Circuit emphasized that its decision was "a

narrow one," and did not expand its analysis to include any other crimes that were not before the Court, nor did the Third Circuit call into question the facial constitutionality of the statute. *Id*. at 106. The unique facts in *Range* are distinguishable from the instant action.

Here, the Government has shown that there is historical support for restricting the possession of firearms by persons like Santiago who previously committed dangerous crimes.[2] Before and after the Second Amendment was ratified, various regulations existed in this country wherein individuals deemed dangerous, untrustworthy, or who threatened to breach the peace were restricted or otherwise disallowed from possessing firearms. To name a few pre- and post-ratification examples offered by the Government, though without exhaustive detail,[3] (1) some 18th century colonial and state legislatures disarmed groups of people who were deemed dangerous or untrustworthy, including loyalists and anyone who failed to swear allegiance to newly formed governments; *see e.g.*, *United States v. Jackson*, 69 F.4th 495, 503 (8th Cir. 2023) ("In the era of the Revolutionary War, the Continental Congress, Massachusetts, Virginia, Pennsylvania, Rhode Island, North Carolina, and New Jersey prohibited possession of firearms by people who refused to declare an oath of loyalty.") (citing authority from each state))[4]; (2) in

---

[2]    In 2019, Santiago, who also has a delinquent juvenile background, pled guilty in the Middle District of Pennsylvania to conspiracy to burglarize a pharmacy, in violation of 18 U.S.C. § 2118(d), burglary of a pharmacy, in violation of 18 U.S.C. § 2118(b), conspiracy to possess stolen firearms, in violation of 18 U.S.C. § 371, possession of stolen firearms, in violation of 18 U.S.C. § 922(j), and possession of a firearm by a felon, violating 18 U.S.C. § 922(g). *See* Resp. at 4. In 2017, Santiago pled guilty in the Court of Common Pleas of Lancaster County to receiving stolen property, in violation of Pa. C.S.A. § 3925(a), and fleeing or attempting to elude a police officer, in violation of Pa. C.S.A. § 3733(a), both of which are felonies of the third degree. *Id*.

[3]    Judge Krause, dissenting in *Range*, presents a more detailed account of the history of banning non-law-abiding individuals from possessing firearms from late 16th century England to post-ratification practices of the 18th century. *See Range*, 69 F.4th at 120-28.

[4]    4 Journals of the Continental Congress, 1774-1789, at 205 (Worthington Chauncey Ford ed., 1906); Act of Mar. 14, 1776, ch. 21, 1775-76 Mass. Acts 479; Act of May 1777, ch. III, 9 The Statutes at Large; Being a Collection of all the Laws of Virginia 281-82 (1821); Act of June 13, 1777, ch. 756 §§ 2-4, 1777 Pa. Laws 110, 111-13; Act of June 1776, 7 Records of the Colony of

the mid-19th century, various states[5] had "surety laws" requiring individuals "threatening to do harm" to "post bond before carrying weapons in public[;]" *see Bruen*, 142 S. Ct. at 2148; (3) a federal Reconstruction Order in South Carolina provided that "no disorderly person, vagrant, or disturber of the peace, shall be allowed to bear arms[;]" *see* Cong. Globe, 39th Cong. 1st Sess. at 908-09 (1866); (4) a letter circulated by the Freedman's Bureau, which operated briefly as a government agency after the Civil War, informed citizens that a person "may be disarmed if convicted of making an improper or dangerous use of weapons;" *see Bruen*, 142 S. Ct. at 2152 (cleaned up) (quoting Circular No. 5, Freedmen's Bureau, Dec. 22, 1865).

Support for restricting the possession of firearms by persons like Santiago continued into the 20th century with the Federal Firearms Acts of 1938 and 1961. Whether the 1938 Act is "longstanding" enough for purposes of demarcating the scope of a constitutional right is unlikely. *Cf. Range*, 69 F.4th at 104 (majority opinion) ("Even if the 1938 Act were 'longstanding' enough . . . ."), *with* 69 F.4th at 108 (Krause, dissenting) ("As the majority opinion makes plain, these modern laws have no longstanding analogue in our national history and tradition of firearm regulation."), *and* 69 F.4th at 116 n.5 (Shwartz, dissenting, joined by Restrepo) (stating that in the Majority's view, the "federal felon prohibitions enacted in 1938 and 1961 are too recent to be longstanding"). Regardless, it is "unsurprising" the Federal Firearms Acts of 1938 and 1961 "have no longstanding analogue in our national history and tradition of

---

Rhode Island and Providence Plantations in New England 567 (1862); Act of Nov. 15, 1777, ch. 6, 1777 N.C. Sess. Laws 231; Act of Sept. 20, 1777, ch. XL, 1777 N.J. Laws 90; *see also* Joseph Blocher & Caitlan Carberry, Historical Gun Laws Targeting "Dangerous" Groups and Outsiders 5 & nn. 38-41 (Duke L. Sch. Pub. L. & Legal Theory Series No. 2020-80), https://papers.ssrn.com/sol3/papers.cfm?abstract_id=3702696).

[5]    *See, e.g.*, Mass Rev. Stat. ch. 134, § 16 (1836); Me. Rev. Stat. ch. 169, § 16 (1840); Mich. Rev. Stat. ch. 162, § 16 (1846); Terr. Of Minn. Rev. Stat., ch. 112, §18 (1851); 1854 Ore. Stat., ch. 16, § 17; W. Va. Code, ch. 153, § 8 (1868); 1862 Pa. Laws p. 250, § 6.

firearm regulation . . . because before the New Deal Revolution, Congress was powerless to regulate gun possession and use." *See Range*, 69 F.4th at 108 (Krause, dissenting) (citing *United States v. Cruikshank*, 92 U.S. 542, 553 (1875); *Presser v. People of State of Ill.* 116 U.S. 252, 265 (1886)).  Moreover, although Range would not have been a prohibited person under the Federal Firearms Act of 1938, Santiago would have been based on his prior burglary conviction.[6] *See Range*, 69 F.4th at 104.

Further, although the Third Circuit found that the categorical disarmament of certain groups of "untrustworthy" people was overly broad for the Government to justify disarming Range specifically, the historical analogue presented here offers a much more comparable analogy to the disarmament of Santiago.  Santiago, unlike Range, was previously convicted of dangerous crimes, including, *inter alia*, burglary of a pharmacy and possession of stolen firearms, and therefore threatens to breach the peace with his blatant disregard for the law.[7]  On the other hand, disarming Range, who merely lied about his income on a food stamp application, is not at all comparable to disarming Santiago or, for example, a Loyalist who failed to swear

---

[6]     The Federal Firearms Act of 1938 prohibited those convicted of certain violent crimes, such as murder, rape, kidnapping, and *burglary*, from possessing firearms.  *See* Federal Firearms Act of 1938, Pub. L. No. 75-785, §§ 1(6), 2(f), 52 Stat. 1250, 1250-51 (1938).

[7]     The Court condemns any founding-era laws disarming groups based on their race or religion, which would certainly be unconstitutional for equal protection purposes today. Nevertheless, however abhorrent the Court finds them to be, these laws are still relevant to *Bruen*'s historical analogue inquiry.  *See United States v. Jenkins,* No. 23-088, 2023 U.S. Dist. LEXIS 181224, at *33 (E.D. Pa. Oct. 6, 2023) ("Founding-era governments disarmed people convicted of violent felonies and groups they distrusted like Loyalists, Native Americans, Quakers, and Black people because, in different ways, they thought that these groups were dangerous. *Range* did not dispute the strength or validity of this historical record—it just found that record inapplicable in the case before it.  Thus, if the Government can prove that a firearms regulation, including Section 922(g)(1), disarms someone because they are dangerous in a 'distinctly similar' or 'relevantly similar' way to these laws, it likely will satisfy *Bruen*'s historical test." (cleaned up) (citations omitted)).

allegiance to the government and therefore threatened to breach the peace or pose a danger to the public if armed.

In sum, after a thorough review of the historical examples identified by the Government, the Court finds that the Government has satisfied its burden to establish a historical analogue for criminalizing firearm possession by a person like Santiago, and therefore the Court is persuaded that Section 922(g)(1) is constitutional as applied to Santiago.

### 2. Other challenges

Santiago also argues that Section 922(g)(1) is unconstitutional on its face, unconstitutionally vague, and violates the Commerce Clause. The Court addresses and rejects each of these challenges.

"A party asserting a facial challenge 'must establish that no set of circumstances exists under which the [challenged statute] would be valid.'" *United States v. Mitchell*, 652 F.3d 387, 405 (3d Cir. 2011) (*en banc*) (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)). Therefore, a defendant challenging a criminal statute needs to show that it is "unconstitutional in all of its applications." *Id*. *See also Salerno*, 481 U.S. at 745 ("The fact that [§ 922(g)(1)] might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid."). Here, Santiago has failed to meet his burden to show that § 922(g)(1) is "unconstitutional in all of its applications[,]" where he has not even shown that the statute is unconstitutional as applied to himself.

A criminal statute is unconstitutionally vague, violating due process protections, only if it "fails to provide a person of ordinary intelligence fair notice of what [conduct] is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *See United States v. Williams*, 553 U.S. 285, 304 (2008) (citations omitted). Here, the Court holds

that Section 922(g)(1) is not unconstitutionally vague; the statute unambiguously bars the possession of a firearm by a person that has previously been convicted of a crime punishable by more than one year, or of certain misdemeanors specifically defined by the statute. A mere potential that the statute may strip others of their constitutional rights, for example, the defendant in *Range*, is not sufficient on its own to render the entire statute unconstitutionally vague. *See Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 495 (1982) ("A plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others.").

Lastly, Santiago argues that Section 922(g)(1) is inconsistent with the original public meaning of the Constitution's Commerce clause. However, Santiago admits that this argument was raised for preservation purposes because it is presently foreclosed by precedent. Mot. at 11. Therefore, consistent with binding precedent, Santiago's Commerce Clause argument for the unconstitutionality of Section 922(g)(1) is likewise rejected. *See United States v. Singletary*, 268 F.3d 196 (2001) (rejecting the argument that Section 922(g)(1) is an invalid exercise of Congress' Commerce Clause authority).

\* \* \*

The Court's decision today comports with other similar challenges in this district.[8] *See e.g.*, *Blackshear*, 2023 U.S. Dist. LEXIS 163057 (denying facial and as-applied challenge to

---

[8] The Court is aware of two cases outside of this district, the first of which is pointed out by Santiago in his brief, wherein the court found that Section 922(g)(1) was unconstitutional as applied to those defendants. *See United States v. Quailes*, No. 21-176, 2023 U.S. Dist. LEXIS 147657 (M.D. Pa. Aug. 22, 2023), appeal docketed, No. 23-2533 (3d Cir. Aug. 24, 2023); *United States v. Harper*, No. 21-236, 2023 U.S. Dist. LEXIS 155822 (M.D. Pa. Sept. 1, 2023), appeal docketed, No. 23-2604 (3d Cir. Sept. 6, 2023). However, this Court is not persuaded by the reasoning in these opinions, and the reasoning herein is consistent with the general approach of this district.

§ 922(g)(1) by defendant with felony drug and firearm convictions); *Ames*, 2023 U.S. Dist. LEXIS 150982 (denying facial and as-applied challenge to § 922(g)(1) by defendant with felony robbery and assault convictions); *United States v. Pearson*, No. 22-271, 2023 U.S. Dist. LEXIS 170034 (E.D. Pa. Sept. 25, 2023) (denying facial and as-applied challenge to § 922(g)(1) by defendant with felony drug distribution and firearm convictions); *United States v. Johnson*, No. 23-77, 2023 U.S. Dist. LEXIS 174896 (E.D. Pa. Sept. 21, 2023) (denying facial and as-applied challenges to § 922(g)(1) by defendant previously convicted of unlawfully carrying firearms and receiving stolen property); *United States v. Green*, No. 22-387, 2023 U.S. Dist. LEXIS 168028 (E.D. Pa. Sept. 21, 2023) (denying facial and as-applied challenges to § 922(g)(1) by defendant previously convicted of, *inter alia*, assault and various firearms offenses). Likewise, although it does not dispose of the need to conduct the inquiry herein, the Supreme Court has previously endorsed the presumptive validity of the prohibition of felon firearm possession, *see District of Columbia v. Heller,* 554 U.S. 570, 626 (2008) ("[N]othing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons[.]"), and several sitting Justices have expressed support of this view in the wake of *Bruen*, *see Bruen*, at 2157 (Alito, J., concurring) (explaining that *Bruen* does not disturb "anything that we said in *Heller* or *McDonald* . . . about restrictions that may be imposed on the possession or carrying of guns"); *id*. at 2162 (Kavanaugh, J., concurring, joined by Roberts, C.J.) (positively citing the proposition in *Heller* that doubt should not be cast on the longstanding prohibition of felon firearm possession).

### III. CONCLUSION

Section 922(g)(1) is not unconstitutional as applied to Santiago's alleged conduct because the Government has shown there is a historical tradition of disarming people like Santiago. Further, Section 922(g)(1) is not unconstitutional on its face, unconstitutionally vague, or an

improper exercise of the Commerce Clause.  For those reasons, and as further explained above, Santiago's Motion to Dismiss the Indictment is denied.

A separate Order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge